# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| ROBERT NATHANIEL FRANCIS | : | CIVIL ACTION NO.  13-2954<br>Section P |
| VS. | : | JUDGE ROBERT G. JAMES |
| TENSAS PARISH DETENTION<br>CENTER, ET AL. | : | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Upon reference of the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned Magistrate Judge held an evidentiary hearing on July 22, 2014, for purposes of entertaining testimony and evidence on the threshold issue of exhaustion of administrative remedies.  For reasons set forth below, it is recommended that plaintiff Robert Nathaniel Francis's claims against defendants, Helen Leonard, Sheila Jefferson (named as "Nurse Jefferson"), and Dianne Taylor, be DISMISSED, without prejudice, on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(d).

## Background

Robert Nathaniel Francis is an inmate in the custody of Louisiana's Department of Public Safety and Corrections ("DOC") who, during the relevant period, was housed at the Tensas Parish Detention Center ("TPDC"), Waterproof, Louisiana.[1]  On October 28, 2013, Francis filed the instant pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against the TPDC Medical Department, the head nurse, and the "night shift nurses."  Francis alleged that on May 24, 2013,

---

[1] He recently was transferred to LaSalle Correctional Center.  *See* doc. #s 27 & 28.

he was stabbed in the right eye and sprayed with a chemical agent, but received no treatment from the medical department.  As a result, he developed a "massive infection" that caused partial blindness.  He prayed for $300,000 in damages, future medical expenses, and a transfer to another facility.

On December 26, 2013, in response to court order, Francis amended his complaint to name as defendants, Head Nurse Helen Leonard, Nurse Sheila Jefferson (named as, "Nurse Jefferson"), and Nurse Dianne Taylor.  (Amend. Compl., [doc. # 9]).  On February 14, 2014, the court completed its initial screening pursuant to 28 U.S.C.§§ 1915 and 1915A, and ordered service on Leonard, Jefferson, and Taylor, via U.S. Marshal.  (Feb. 14, 2014, Mem. Order [doc. # 11]).

On March 28, 2014, defendants, Jefferson, Leonard, and Taylor, answered the complaint, as amended, and on April 22, 2014, filed a motion for summary judgment seeking dismissal of plaintiff's complaint for failure to exhaust available administrative remedies.  On May 9, 2014, the undersigned recommended that the motion be granted, and that plaintiff's claims against movants be DISMISSED, without prejudice, on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis.  (May 9, 2014, Report and Recommendation [doc. # 29]).  The undersigned further recommended that plaintiff's claims against defendants, Tensas Parish Detention Center and the Medical Department Tensas Parish Detention Center, be DISMISSED, with prejudice, and that "unknown night shift nurses" be STRICKEN as defendants.  *Id*.

On May 29, 2014, the District Court declined to adopt the report insofar as it recommended dismissal of movants' claims for failure to exhaust administrative remedies.  (May

29, 2014, Ruling and Judgment [doc. #s 32 & 33]).  Rather, the District Court referred the matter

to the undersigned to hold an evidentiary hearing on the issue of exhaustion.  *Id*.  The Court

adopted the remainder of the Report and Recommendation.  *Id*.

Accordingly, the undersigned scheduled the matter for a July 22, 2014, evidentiary

hearing to address the issue of administrative exhaustion only.  (May 29, 2014, Order [doc. #

34]).  The matter is now before the court.

**Hearing Testimony and Evidence**

At the hearing, the court heard testimony from plaintiff Robert Nathaniel Francis and

defense witnesses:  Fred Schoonover, Gwendolyn Robinson, Nolen Bass, Edward Walker, and

John Smith.  The court also received into evidence the following exhibits,

**Plaintiff Exh. 1)**    May 28, 2013, Memorandum from Major Edward Walker to Deputy Warden F. Schoonover

**Defense Exh. 1)**    TPDC Offender Rules and Regulations Handbook, pgs. 15-17.

       **2)**    Blank Grievance Forms

       **3)**    Spreadsheet of Grievances (1/2013-8/2013)

       **4)**    Spreadsheet of Grievances (1/2014-6/2014)

       **5)**    Affidavit of Jonathan Vining, attorney for Louisiana Department of Public Safety & Corrections

**I.**    **Hearing Testimony**

1)    <u>Plaintiff</u>

Robert Francis was incarcerated at the TPDC from December 2012 until May 2014.  He

has a felony conviction within the past ten years for possession of heroin.  He was familiar with

the grievance procedure at the TPDC and received the handbook.  He knew that if he had a

3

complaint he was supposed to place it in the box in the "chow hall."  He admitted that he also could obtain forms from the law library.

Francis testified that he sent several grievances to the TPDC administration, but never received a response.  He claims that he sent an "ARP" to the Department of Corrections on August or September 14th.  In the end, he sent two:  one was because of his inability to receive a response; the other was for the law library being closed.  It also addressed his medical treatment at the TPDC.  He had to send the letter home first, so it could be forwarded to the DOC.

Francis stated that Captain Bass, Warden Smith and "all of them" received paperwork from him.  Furthermore when he requested grievance forms, he did not receive them.  He also requested medical records, but nothing came back.

Francis stated that he sent the ARP to the DOC.  Whenever Francis would receive a response from the DOC, Captain Bass would call him to the front to sign the book for legal mail.

2)   <u>Fred Schoonover</u>

Fred Schoonover is a deputy warden at the TPDC.  He has been employed at the facility since 2010.  He is familiar with the inmate administrative remedy grievance procedure ("ARP").  He is basically in charge of documentation compliance at the facility.  Under the ARP process, inmates have access to forms in the housing unit control centers and in the law library.  Inmates also can ask any correctional officer for a form. The ARP process is outlined in the inmate handbook that inmates receive at intake into the facility.  There is a drop box in the facility's dining room where inmates may place their grievances.  They also may place them in the inmate mailbox.

Each morning, the TPDC's receptionist, Gwendolyn Robinson, opens the boxes and

retrieves the grievances, request forms, and mail.  She brings the contents to the front office where she sorts and distributes them.

When the receptionist retrieves a grievance form, she enters the information into a spreadsheet that she maintains on her computer.  The spreadsheet tracks all of the ARPs received at the facility.  Each entry includes the date that the ARP was received, the inmate's name, the date that it was answered, and the response.  When an ARP is answered, it is returned to the inmate and a notation is made on the spreadsheet.

Schoonover reviewed the spreadsheets of grievances for the periods from January through August 2013 and from January until June 2014.  However, there was no record of a grievance submitted by Francis.

In addition to the spreadsheet, Schoonover also retains all of his answered ARPs on his computer.  Schoonover searched his computer, but did not find any responses to an ARP submitted by Francis.

Schoonover did not receive the ARP that Francis purportedly sent him on July 10, 2013. Schoonover does not recall Francis ever speaking to him about a grievance form or any kind of ARP.

It is very simple for an inmate to obtain an ARP form.  All he needs to do is request one from the first available officer.  Francis was housed at the TPDC from December 2012 until April 2014.

3)    Gwendolyn Robinson

Gwendolyn Robinson is the receptionist at the TPDC.  Her duties include cataloging or handling grievances and complaints from prisoners.  Sergeant Johnson normally retrieves the

grievances from the chow hall and brings them to Robinson in the front office.  Nobody opens the grievances before Robinson receives them.  She sorts the documents and decides how to distribute them.

Robinson inputs the information from the grievance forms into the spreadsheets. Grievances normally are submitted on an ARP form.  She usually forwards the grievances to Major Walker or Warden Schoonover.  She also logs the information in the computer.

From the records available, Robinson never received a grievance or ARP from Francis.  If she had received one, it would have been logged in the computer with the rest of the grievances.

Robinson agreed that she had no reason to tamper with the grievances.  She would never disregard a grievance or complaint for any reason.  No one told Robinson to strike Francis's name from the computer or to eliminate his name as if he had never filed a grievance.

Robinson does not recall receiving any grievances when the toilets backed up at the facility.  However, she does recall receiving "request" forms regarding that matter.

4)    <u>Nolen Bass Jr.</u>

Nolen Bass Jr. is an employee with ten years of experience at the TPDC.  He is the assistant chief of security.  Sometimes grievances are referred to him.  When he receives a grievance, he will review it, and answer it to the best of his knowledge.  He never received a grievance directly or indirectly from Francis as a result of any incident.

If he had received a grievance directly from Francis, he would have told him to place it in the box so it can go through the process.  If someone requires a form, Bass tells them to go get it from the control room or law library.  Bass has never refused grievance paperwork or told Ms. Robinson not to process Francis's information.  Francis never complained to Bass about his

grievances not being processed.

5)      Edward Walker

Edward Walker is an eleven year employee of the TPDC.  He is chief of security.

Sometimes grievances are issued to him after they come out of the box.  He receives the

grievances from Ms. Robinson.  Walker never received a grievance from Francis – directly or

indirectly.  Francis never approached Walker to complain about grievances not being processed.

If Francis *had* complained, Walker would have investigated the matter.  If a grievance had been

filed, Walker would not have hesitated to process it.  Walker never denied Francis's access to

forms.  He also is not aware of anyone else denying Francis access to forms.

Walker does not recall whether he spoke to Francis about the incident referenced in

plaintiff's Exhibit 1.

6)      John Smith

John Smith is the warden at the TPDC.  He has been employed at the facility for the past

five years.  He has 26 years of experience in corrections.

Smith is familiar with the grievance procedure.  He has never denied Francis or any other

inmate access to paperwork or grievance information.  He also never told Francis not to file any

grievances or that he would throw them away if he did.

As warden, Smith becomes directly involved in the grievance procedure if it involves the

deputy warden. If the issue is below the deputy warden, then the grievance usually goes to the

deputy warden. Smith usually answers the second step appeal, however, if there is one.

If Francis had filed a complaint in 2013 or 2014, Smith would have been aware of it by

now.  Smith has had employees search for a grievance from Francis, but no one has found

7

anything.

Smith testified that it was very easy to obtain a grievance form.  In fact, an inmate can submit an ARP on any piece of paper at all.  Also, an inmate can obtain a copy of his ARP by asking the inmate liaison to make him a copy.  Not all jail facilities employ the same grievance form.

If a grievance is not on the spreadsheet, then it did not happen – the facility did not receive it.

Smith does not recall Francis ever speaking to him and asking what happened to his grievance.  Smith regularly talks to the inmates.  He retains two inmate counsel positions in the facility's law  library.

## II.    Hearing Exhibits

**Pl. Exh. 1)**    May 28, 2013, Memorandum from Major Edward Walker to Deputy Warden F. Schoonover

In this memorandum dated May 28, 2013, Major Edward Walker documented that on May 24, 2013, at approximately 6:30 p.m. there was a use of force (chemical weapons/hands on) DOC inmate Francis.  The remainder of the memorandum states that "[u]pon reviewing all reports and speaking to the inmate and the officers involved, I find that the officers actions was [sic] justifiable and needed to control the situation."

**Def. Exh. 1)**    Excerpts from the TPDC Offender Rules and Regulations Handbook

The TPDC's Administrative Remedy Procedure is available to inmates to allow systematic redress of conditions relating to confinement.  Under the ARP, a detainee is required to obtain an "Inmate Grievance Form" from the dormitory officers.  He must complete the form,

seal it in an envelope marked "grievance," address it to the warden, and place the grievance in the kitchen mail box for delivery to the warden.  The written grievance must be filed within 30 calendar days "from the date of the incident or the complaint occurred, unless it was not feasible to file within such period."  *Id*.  The "First Respondent" will have "up to 15 days from receipt of the grievance to fully investigate, act on and provide a written response to the inmate."  *Id*.

If an inmate is dissatisfied with the decision of the "First Step Respondent," then he "may file for Step II by indicating so on the Inmate Grievance Response Form and forwarding it to the Warden within 5 days."  *Id*.  Thereafter, the Warden shall ensure that "the inmate receives a response in writing within 25 days of receipt of the request for Step II review."  *Id*.

**Def. Exh. 2)**   Various Blank Grievance Forms

The first document is entitled "Grievance Form," and contains the following instructions immediately beneath the heading:

> (You must send this form to the Warden within 30 days of the incident of which you are complaining.  Send it to the Warden by putting it in an [sic] Detainee Mail Box; if you are in Lock-Down, hand it to security personnel.  Keep copy 4. [sic] Make sure all copies are legible.  Use a separate form for each grievance.  You will receive a response within 30 days.  If you do not receive a response within that time, you may file a Request for Warden's Review within the following *5* days.)  No offender will be subjected to retaliation by staff for submitting a complaint.

**Def. Exh. 3)**   Inmate Grievance Spreadsheet

This is a list of eleven grievances that span the period from January until August 2013. Each grievance contains the inmate's name, date the grievance was received, the officer to whom the grievance was referred, the officer's response, and the response date.  The list does not include a grievance from Francis.

**Def. Exh. 4)**   Inmate Grievance Spreadsheet

This is a list of eight grievances that span the period from January until June 2014.  Each grievance sets forth the inmate's name, the date the grievance was received, the officer to whom the grievance was referred, the officer's response, and the response date.  The list does not include a grievance from Francis.

**Def. Exh. 5)**   Affidavit from Jonathan Vining

The affidavit is dated July 2, 2014, and sworn to by Jonathan Vining as "the Attorney" for the DOC.  Vining averred that after careful review of DOC records, he found no grievances or complaints filed by Francis as to the TPDC, and that no such documents were received.

### **Analysis and Resolution of Disputed Facts**

**I.**   **Law**

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process.  *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted).  All "available" remedies must be exhausted, whether speedy and effective, or not.  *Porter v. Nussle*,  534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules."  *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford v. Ngo*, 548 U.S. at 89-93, 126 S.Ct. 2378)).  An

untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement.  *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter, supra* (citation omitted).  An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary."  *Richbourg v. Horton*, 2008 WL 5068680 (5ᵗʰ Cir. Dec. 2, 2008) (unpubl.) (citation omitted).  A claim for deliberate indifference to an inmate's serious medical needs is also subject to exhaustion.  *Harris v. Hegmann*, 198 F.3d 153, 158 (5ᵗʰ Cir. 1999).  Exhaustion also applies to claims brought against defendants in their official and/or individual capacities.  *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5ᵗʰ Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5ᵗʰ Cir. Sept. 29, 2003) (unpubl.).

The Fifth Circuit has consistently held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance.  *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5ᵗʰ Cir. May 24, 2007) (unpubl.) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954, (5ᵗʰ Cir. Oct. 28, 2009) (unpubl.) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561, ( April 15, 2010) (unpubl.) (citation omitted).  Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances."  *Dillon v. Rogers*, 596 F.3d 260 (5ᵗʰ Cir. 2010) (citations omitted).  When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable.  *Id*.  "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other

11

problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)).  Stated another way, the grievance filing period is tolled only so long as the inmate is actually impeded from invoking and exhausting the process.

A prisoner is required to exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process.  *Hicks v. Lingle*, 370 F. App'x 497, 499 (5th Cir. 2010); *Ates v. St. Tammany Parish*, Civ. Action No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014).  Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps.  *Ates, supra* (and cases cited therein).  In short, the courts will not "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."  *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n. 6 (2001).

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies.  *Dillon*, 596 at 266 (citation omitted).  The court is authorized to resolve factual disputes concerning exhaustion.  *Id*.

## II.   The TPDC Had an Available Administrative Remedy Procedure

The evidence uniformly establishes that the TPDC had a two-step grievance procedure in effect during the relevant period.  The first step requires an inmate to complete a written grievance, address it to the warden, and place in the mail box in the kitchen.  The so-called "First Respondent" has 15 days to investigate and submit a written response to the inmate.  If the inmate remains unsatisfied with the initial response (or if he does not receive a response within 30 days), he may file for Step II review by so indicating on the Inmate Grievance Response Form

12

and forwarding it to the warden.  The warden shall ensure that the inmate receives a response within 25 days thereafter.

### III.    Francis Did Not Exhaust Available Administrative Remedies

The undersigned finds that defendants have established by a preponderance of the evidence that Francis was aware of the TPDC grievance policy, but that he nonetheless failed to submit a written grievance regarding his instant claim for inadequate medical care.  Although defendants failed to adduce a computer log for grievances received for the period between September and December 2013, the defense witnesses uniformly maintained that they never received a grievance from Francis.  Furthermore, while Ms. Robinson indicated that she sometimes would characterize inmate complaints as "requests," rather than "grievances," she steadfastly maintained that she never received a grievance from Francis.

The court observes that the computer log of grievances includes a grievance from another inmate, Roy Milton, who has a pending case before this court.  According to the computer log/spreadsheet, Milton made serious allegations of brutalization by a prison guard.  Certainly, if, as suggested by plaintiff, the TPDC was purposefully losing or suppressing his grievances, it stands to reason that they also would have done so for Milton.

In addition, plaintiff contends that he sent grievances to the DOC concerning conditions at the TPDC.  Again, however, the DOC has no record of receiving these grievances.  For the court to credit plaintiff's version of events, it would have to find that the DOC and the TPDC colluded to suppress his grievances.  While such a finding is not impossible, it strains credulity.  Moreover, plaintiff did not provide any witnesses to support his allegations that the TPDC does not make grievance forms available or that it has a practice of suppressing submitted forms.

13

In sum, the undersigned is compelled to find that plaintiff failed to exhaust available administrative remedies.

## IV.      Remedy for Failure to Exhaust

The plain language of the PLRA precludes any further action on plaintiff's claims until he has fully exhausted the administrative remedy procedure.[2]  Dismissal is the remedy, and although it is typically without prejudice,[3] the court is authorized to dismiss plaintiff's complaint with prejudice to his right to re-file it, in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled-that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff]'s action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007)).

The foregoing approach is appropriate here.  Accordingly, if plaintiff exhausts his administrative remedies with respect to the claims raised herein, he may present these § 1983 claims again, but may not proceed *in forma pauperis* to do so.[4]

---

[2]  *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 920 (2007) (§ 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending . . . [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.").

[3]  *See e.g., Plaisance v. Cain, supra*; *Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th Cir. 2009).

[4]  Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance with an agency's deadlines and other critical procedural rules.  *Woodford, supra*.  At this point, plaintiff's delay effectively may foreclose his ability to properly exhaust available administrative remedies.

14

**Conclusion**

For the foregoing reasons,

IT IS RECOMMENDED that the plaintiff Robert Nathaniel Francis's claims against defendants, Helen Leonard, Sheila Jefferson (named as "Nurse Jefferson"), and Dianne Taylor, be DISMISSED, without prejudice, on the merits, but DISMISSED with prejudice for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(d).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 23rd  day of September 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

15